IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Tennessee Commerce Bank, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| WILLIAM HARRISON CRABTREE, JR., | ) ) ) ) |
| Defendant. | ) |

CASE NO. 3:14-0370
JUDGE CAMPBELL/KNOWLES

**REPORT AND RECOMMENDATION**

This matter is before the Court upon a "Motion to Strike and Dismiss Certain Purported Counterclaims and Defenses of the Defendant," filed by Plaintiff, Federal Deposit Insurance Corporation, in its capacity as Receiver of Tennessee Commerce Bank ("FDIC-R"). Docket No. 8. Plaintiff has filed a supporting Memorandum of Law. Docket No. 9. Defendant has filed a Response in Opposition to the Motion and a Memorandum of Law. Docket Nos. 11, 12. Plaintiff has filed a Reply to Defendant's Response. Docket No. 13.

The factual background underlying this case appears to be relatively simple.

On March 29, 2006, Defendant executed and delivered to Citizen's Corporation ("Citizens") a Promissory Note in the amount of $166,021.76, with a maturity date of March 29, 2013. On January 4, 2007, Citizens executed and delivered to Tennessee Commerce Bank ("TCB"), a Tennessee banking corporation, an Assignment assigning the subject Note to TCB.

Defendant later executed an Amended and Restated Pledge and Security Agreement, which amended and restated certain collateral pledged upon the Note. On January 27, 2012, FDIC-R was appointed Receiver of TCB.

Plaintiff avers that, by virtue of its appointment as Receiver of TCB, it is the current holder and owner of the subject Note and has all rights and powers to seek enforcement and collection of the Note pursuant to 21 U.S.C. § 1821(d)(2). Plaintiff avers that the Note is in default and seeks to recover the principal amount, accrued in unpaid interest, other fees, additional interest and late charges accruing after January 31, 2014, and fees and expenses of collections, including attorneys fees.

In response to the Complaint, Defendant filed an "Answer to Complaint and Counterclaim." Docket No. 6. In general terms, Defendant denied many of the allegations of the Complaint. In his Answer, Defendant stated he "reasonably relied on promises and representatives made by authorized representative [*sic*] of Citizens Corporation which were dishonored or false and as such has made payments in respect to said Note." He further averred that he did not "receive or retain one penny of the proceeds of the Note or the transactions evidenced thereby, nor did he receive any other material benefit therefrom." Docket No. 6, p. 3. After answering the allegations of the Complaint, Defendant set forth a number of "affirmative or special defenses and counterclaims. . . ." *Id*. It appears that the "affirmative or special defenses" are set forth in paragraphs 27-34 of the "Answer to Complaint and Counterclaim." Docket No. 6, p. 3-4. Those "affirmative or special defenses" are:

27. The Complaint fails to state a claim upon which relief can be granted.

28. Plaintiff's claims are barred by waiver and estoppel.

29. Plaintiff's claims are barred by the doctrine of accord and satisfaction.

30. Plaintiff's claims are barred by the doctrine of failure of consideration.

31. Plaintiff's claims are barred or reduced by application of the rights of setoff or recoupment.

32. To the extent Plaintiff has suffered any damages, Plaintiff has failed to mitigate its damages.

33. Defendant states that he has breached no duty to Plaintiff by action or failure to act.

34. Plaintiff is not entitled to attorney's fees or cost under the provisions of the Note, Security Agreement, or otherwise.

Docket No. 6, p. 3-4.

Although it is not entirely clear, it appears that Defendant's "Counterclaim" is set forth in paragraphs 36-45 of the "Answer to Complaint and Counterclaim." *Id*., p. 4-6. Essentially, Defendant's Counterclaim avers that there was an understanding and agreement between him and Citizens that he would not have any personal liability on the Note. Defendant avers that TCB had "actual and/or constructive knowledge of all material agreements between [Defendant] and Citizens." *Id.* Defendant also avers that TCB "knew or should have known that the Note was not for commercial purposes and only and internal dealing between [Defendant] and Citizens." *Id.* Defendant additionally avers that he "was caused to enter into the transaction with Citizens by representation [*sic*] and promises which appear now to have been materially false, misleading, or fraudulent, on which Defendant reasonably relied." *Id*., p. 4. Defendant argues that, as a result, the Note or other instruments are void or voidable and that he is entitled to "rescind the transaction." *Id.*

Defendant further avers that he "steps into the shoes of TCB and/or Citizens as to any defense he may have against Citizens and/or its officers and/or directors." *Id.* He describes the Agreement between himself and Citizens, and states that he received no funds from Citizens as represented by the Note. *Id.* He avers that Citizens and its officers and directors breached a fiduciary duty of care to him in dealings related to the employee stock incentive plan. *Id.* He additionally avers that "Citizens and its officers and directors engaged in improper and fraudulent conduct," and that Citizens and its officers and directors acted under undisclosed conflict of interest by offering the stock to Defendant. *Id.* Finally, he avers that Citizens and its officers and directors engaged in securities fraud. *Id.*

The final paragraph of Defendant's "Answer to Complaint and Counterclaim" states in full:

> WHEREFORE, Defendant prays that after such notice and hearing as may be required, this Court enter an Order dismissing the Complaint of Plaintiff and assess cost to Plaintiff, and grant Defendant such other and further general relief to which he may be entitled. In the alternative, Defendant demands a trial by jury.

Docket No. 6, p. 6.

According to the Motion, it is filed pursuant to Rule 12(b)(1), 12(b)(6), 12(f) and 9(b) of the Federal Rules of Civil Procedure. Plaintiff's Motion states:

> Specifically, FDIC-R requests that any "counterclaims" which Defendant has attempted to assert . . . be dismissed as the Court lacks subject matter jurisdiction over such "counterclaims" under the provisions of 12 U.S.C. § 1821(d). Additionally, Defendant's affirmative defenses should be stricken and dismissed as they fail to state a claim under the requirements of 12 U.S.C. § 1823(e) and *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 Ct. 676, 86 L.Ed. 956 (1942). Alternatively, Defendant's claim of fraud fails to state a claim in that he fails to state his assertion of fraud with

4

particularity as required by Fed. R. Civ. P. 9(b).

Docket No. 8, p. 1.

Initially, the Court notes that Motions to Strike are governed by Fed. R. Civ. P. 12(f), which provides in relevant part, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The instant Motion is proper under Rule 12(f), as it addresses striking "an insufficient defense," or "immaterial" matter.

As set forth above, the instant Motion rests upon three main grounds: (1) lack of subject matter jurisdiction under 12 U.S.C. § 1821(d); (2) failure to state a claim; and (3) failure to state fraud with particularity.

Plaintiff first argues that any Counterclaims Defendant may assert against it are subject to the mandatory administrative claims process set forth in 12 U.S.C. § 1821(d)(3 -13). 12 U.S.C. § 1821(d)(13)(D) provides:

> (D) Limitation on judicial review
> Except as otherwise provided in this subsection, no court shall have jurisdiction over –
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] receiver.

Section 1821 generally provides that anyone wishing to assert a claim against the assets, or based upon the conduct, of a failed depository institution, must present their claim to the FDIC in accordance with the procedures set out in that Section. Plaintiff argues that, if the claim

procedure has not been followed and the period for filing administrative claims has expired, the District Court lacks subject matter jurisdiction over the claim. *Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 883 (5th Cir. 1992); *Village of Oakwood v. State Bank & Trust Co.,* 539 F.3d 373, 385 (6th Cir. 2008). Plaintiff argues that Defendant does not allege that he has asserted his counterclaims through the administrative procedures as required by § 1821, and that the Court lacks subject matter jurisdiction over any such counterclaims.

Second, Plaintiff argues that Defendant's "affirmative defenses" of fraudulent inducement and misrepresentations are barred by *D'Oench, supra,* and 12 U.S.C. § 1823(e). Plaintiff argues that a defense of fraudulent inducement is not a valid defense to an action by the FDIC to collect upon a Promissory Note. *Langley v. FDIC,* 484 U.S. 86 (1987). As the *Langley* Court stated:

> The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew. It would be rewriting the statute to hold otherwise.

484 U.S. at 95.

Plaintiff argues that, over 70 years ago, the United States Supreme Court established a common law estoppel doctrine which prohibits defendants from using unwritten agreements in order to defend against efforts by the FDIC to collect upon Promissory Notes which it has acquired from a failed bank. Docket No. 9, p. 9, *citing D'Oench*. Plaintiff argues, "The [*D'Oench*] doctrine holds that when a bank fails, borrowers may not later defend against collection efforts of the FDIC by arguing that they had an unwritten or oral agreement which modified the Note." *See also Abrams v. FDIC,* 944 F.2d 307, 310 (6th Cir. 1991).

Plaintiff argues that the holding in *D'Oench* was subsequently "codified and expanded" in 12 U.S.C. § 1823(e), which provides:

> (e) Agreements against interests of the Corporation
>
> (1) In general
>
> *No agreement* which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, *shall be valid against the [FDIC] unless such agreement* –
>
> (A) *is in writing*,
>
> (B) *was executed* by the depository institution *and* any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) *was approved by the board of directors* of the depository institution or its loan committee, *which approval shall be reflected in the minutes* of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, *an official record of the depository institution*.

(Emphasis added).

Third, and alternatively, Plaintiff argues that Defendant has failed to state a claim for fraud with particularity as required by Fed. R. Civ. P. 9(b). Under that Rule, "a party must state with particularity the circumstances constituting fraud or mistake." The elements of fraud are: (1) an intentional misrepresentation of a material fact; (2) knowledge of the representation's falsity; (3) an injury caused by reasonable reliance on the representation; and (4) the requirements

7

that the misrepresentation involve a past or existing fact. *Mid-South Industries, Inc. v. Martin Machine & Tool, Inc.,* 342 S.W.3d 19 (Tenn. Ct. App. 2010). In order to meet the particularity requirement, a Complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *Frank v. Dana Corp.,* 547 F.3d 564, 570 (6th Cir. 2008).

Plaintiff argues that Defendant has simply failed to comply with these requirements.

Defendant makes four arguments in response: (1) the instant Motion is an attempt to have the Court rule on what is actually a premature summary judgment motion without the benefit of a pretrial record; (2) § 1821(d) is inapplicable to counterclaims that do not seek money payments from the failed institution's assets, as is the fact in the case at bar; (3) the *D'Oench* doctrine and § 1823(e) are not applicable to the facts of this case; and (4) with regard to Defendant's fraud claims, Defendant states that he "intends to file with this Court a First Amended Answer that may more particularly plead Defendant's fraud claim if Defendant or this Court determines that such additional pleading is required." Docket No. 12, p. 11.

Initially, the Court rejects Defendant's first and fourth arguments set forth above. The instant case was filed on February 5, 2014. Docket No. 1. The instant Motion was filed March 27, 2014. Defendant has had ample time to conduct whatever discovery he wished to conduct. Additionally, Defendant's statement that he intended to file an Amended Answer as required by Rule 9(b) was made on April 17, 2014. No such Amended Answer has yet been filed.

Second, Defendant argues that § 1821(d) is inapplicable to counterclaims not seeking money payments. This argument completely lacks merit, as the statute specifically relates to

"any claim or action for payment from, *or any action seeking a determination of right with respect to, the assets of any depository institution . . . .*" 12 U.S.C. § 1821(d)(13)(D)(i) (emphasis added).

Defendant argues that § 1821(d)(5) authorizes the FDIC to receive and then disallow or allow and then "pay" claims. Docket No. 12, p. 9. Section 1821(d)(5) contains six different subsections, however, and Defendant does not specify which subsection restricts the FDIC to actually paying claims. In fact, § 1821(d)(5)(A)(i) speaks in terms of the FDIC determining "whether to allow or disallow the claim . . . .," as do subsections (d)(5)(B), (d)(5)(C), (d)(5)(D), and (d)(5)(E).

Defendant cites *FDIC v. Lacentra Trucking, Inc.*, 157 F.3d 1292 (11th Cir. 1998), for the proposition that the FDIC as a Receiver, has the option either to file suit on the Note or to seek administrative review under § 1821(d). Docket No. 12. Defendant argues, "Once the FDIC has chosen to file suit it cannot then change its mind at a later point and seek dismissal of defendant's counterclaims for failure of the defendant to first file the counterclaims under 1821(d)." *Id.*

As Plaintiff points out, however, *Lacentra* involved a situation where suit was filed before the bank had failed and before the FDIC had been appointed Receiver. Thus, *Lacentra* is not persuasive.

Defendant's third argument can be summarized as follows:

> The problem with the FDIC's argument urging the application of *D'Oench* and/or § 1823(e) to the case at hand is that all of the cases cited by the FDIC in its Memorandum of Law supporting this position involve fact patterns quite different than the facts of this case. The cited cases generally involve a maker of a note who had a direct relationship with a failed financial institution. In those cases, the federal insuror is attempting to enforce and collect on the

9

> note and the maker is attempting to raise defenses based on information that is not in the records of the failed financial institution.

Docket No. 12, p. 5.

Defendant also states, "Most courts that have considered the issue have held that *D'Oench* and/or § 1823(e) do not apply to third party note assignments." *Id*., p. 6.

The controlling law, however, is set forth in *D'Oench* and § 1823(e), not in case law from other jurisdictions. The plain language of § 1823(e) clearly applies to the case at bar. Defendant offers no logical explanation why § 1823(e) would treat differently a claim involving the maker of a Note who had a direct relationship with a failed financial institution versus a maker who did not. The language of § 1823, quoted above, states in relevant part, "No agreement . . . shall be valid against the [FDIC] . . . ."

Finally, even if the alleged "fraud" of Citizens were actionable, Defendant has not pled it with particularity as required by Fed. R. Civ. P. 9(b). Defendant's "counterclaim" does not identify the allegedly fraudulent statements, the speaker of such statements, the time and place the statements were made, or how the statements were supposedly fraudulent.

While Defendant relies upon *FDIC v. Meo*, 505 F.2d 790 (9th Cir. 1974), to support his claim of being a "wholly innocent borrower," *Meo* is not controlling, and it is no longer good law. *Meo* was decided in 1974, prior to the Supreme Court's decision in *Langley*, discussed above. *See also FDIC v. Investors Associates X, LTD.*, 755 F.2d 152, 155 (6th Cir. 1985)(the maker's "good faith is simply irrelevant").

For the foregoing reasons, the undersigned recommends that the instant Motion to Strike and Dismiss (Docket No. 9) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge